

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

FRANK DAVID MILLER

     Plaintiff,

v.                          Civil Action No. 3:07cv438

GENE M. JOHNSON, et al.,

     Defendants.

## OPINION

This matter is before the Court on DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S DAMAGES CLAIMS ON SOVEREIGN IMMUNITY GROUNDS (Docket No. 70) filed by Defendants Virginia Department of Corrections ("VDOC") and George M. Hinkle. VDOC and Hinkle assert that Miller's claims for damages under Section 504 of the Rehabilitation Act, Counts VI and VII, are barred by sovereign immunity conferred by the Eleventh Amendment to the United States Constitution. Because of the constitutional attack on a federal statute, the United States was invited to participate and has filed a brief in support of the statute.  For the reasons set forth below, the motion to dismiss will be denied.

## STATEMENT OF FACTS

VDOC is an agency created by Virginia statute.  It operates and manages, for the Commonwealth of Virginia various correctional facilities within which Miller has

been incarcerated.   (Complaint at ¶ 4.)   Hinkle is the Warden at Greensville Correctional Center (Greensville), a prison that is operated and managed by VDOC and in which Miller previously was incarcerated. (Id. at ¶ 5.)

Miller was incarcerated first on or about November 17, 2004.   However, because Miller was awaiting trial and sentencing, he was not transferred to VDOC custody until about February 22, 2007. (Id. at ¶ 11.)   When he was first transferred to VDOC, Miller was incarcerated in the Powhatan Correctional Center in State Farm, Virginia. (Id.)   Then, on February 27, 2007, he was transferred to Deep Meadows Correctional Center.   (Id.)   On March 16, 2007, he was moved to Greensville Correctional Center in Jarratt, Virginia, (id.) and he remained incarcerated there until August 24, 2007, when he was transferred to Coffeewood Correctional Center in Mitchells, Virginia, where he is presently incarcerated.  (Id.)

Miller suffers from Guillain-Barre syndrome, a paralyzing neurological disorder that has caused nerve damage in his feet and ankles. (Id. at ¶¶ 13-14.)   Before his incarceration, Miller's left ankle joint was surgically removed and his ankle was fused to his foot. (Id. at ¶ 14.)   He now requires the same procedure for his right ankle.  (Id.)   As a consequence of his disease, Miller is

-2-

unable to bend his left foot at the ankle and is able to walk only with great difficulty; he is able to climb stairs only while holding handrails in order to steady himself. (Id. at ¶ 15.)   For purposes of this analysis, it is undisputed that Miller is a qualified person with a disability within the meaning of the Rehabilitation Act.

In Count VI of the Amended Complaint, Miller seeks monetary damages from VDOC for the denial of benefits under Section 504(a) of the Rehabilitation Act.  He alleges inter alia, that:

> By refusing to acknowledge...several physical impairments that constitute disabilities and require accommodations, including use of a cane and wheelchair, use of elevators, transport without cuffing his hands to a waist chain...defendant Virginia Department of Corrections violated Mr. Miller's right not to be excluded from participation in or denied the benefits, or subjected to discrimination under any program or activity receiving Federal financial assistance solely by reason of his disability, in violation of his rights under Section 504(a) of the Rehabilitation Act of 1973....

(Id. at ¶ 59.)   In Count VII of the Amended Complaint, Miller makes the same allegations against George Hinkle. (Id. at ¶ 61.)

**DISCUSSION**

## I.   The Statute

Section 504(a) of the Rehabilitation Act prohibits any "program or activity receiving Federal financial assistance" from "subject[ing] any person to discrimination" on the basis of disability.   29 U.S.C. § 794(a).   The statute creates a private right of action against entities that receive federal funds and violate the statutory prohibition against such discrimination.   29 U.S.C. § 794(a); Barnes v. Gorman, 536 U.S. 181 (2002).

In 1985, twelve years after Section 504(a) of the Rehabilitation Act was passed, the Supreme Court of the United States held that the statute was insufficiently clear to establish Congressional intent to condition federal funding on a waiver of Eleventh Amendment immunity for private damages actions against State entities. Atascadera State Hosp. v. Scanlon, 473 U.S. 234, 245-46 (1985).   Congress responded to the decision in Atascadera by enacting 32 U.S.C. § 2000d-7 as part of the Rehabilitation Act Amendments of 1986.   Section 2000d-7 provides in pertinent part:

> (1)   A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for violation of Section 504 of the

Rehabilitation Act of 1973

    (2)    In a suit against a State for violation of a statute referred to in paragraph (1), remedies (including remedies both at law and equity) are available for such a violation to the same extent as such remedies are available for such violations in a suit against any public or private entity other than a State.

32 U.S.C. § 2000d-7(a).

VDOC and Hinkle assert sovereign immunity to claims under Section 504 of the Rehabilitation Act on the ground that there has been no waiver of sovereign immunity because Congress' ability to use the Spending Clause to exact a waiver of sovereign immunity is no greater than its power to abrogate sovereign immunity; and, therefore, say the defendants, because Congress cannot abrogate sovereign immunity in this instance, it cannot condition the receipt of federal funding on a waiver of sovereign immunity by the defendants. The defendants rely principally on the decision in College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 683 (1999), for the proposition that "[f]orced waiver and abrogation are not even different sides of the same coin – they are the same side of the same coin" and, from that premise, they reason that the waiver required by Section 504 of the Rehabilitation Act offends the Eleventh

-5-

Amendment.

At oral argument, counsel for the VDOC and Hinkle acknowledged that no court has ever construed College Savings Bank in the fashion here urged and that the defendants are urging an extension of existing law. The defendants also reluctantly acknowledged that, to reach the result for which they press, this Court would have to deviate from the core holdings in the decisions of the United States Court of Appeals for the Fourth Circuit in Constantine v. The Rectors & Visitors of George Mason Univ., 411 F.3d 474 (4th Cir. 2005) and Madison v. Virginia, 474 F.3d 118 (4th Cir. 2006). For the reasons that follow, the Court declines the invitation extended by VDOC and Hinkle because the controlling law in this circuit is to the contrary and because, in substance, the Commonwealth's argument turns the decision in College Savings Bank on its head.

The starting point for the analysis is the statute at issue. Without doubt, or even dispute by the Commonwealth, the Rehabilitation Act provides a clear statement of Congressional intent to abrogate sovereign immunity from private damages actions under the Rehabilitation Act if a State receives federal funding. Nor is it disputed that the Commonwealth receives federal funding, part of which is

disbursed to VDOC and a facility for which Hinkle was the warden while Miller was confined there.   The next step is to assess the constitutional provision asserted as a bar to Miller's claims.

The Eleventh Amendment states, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   The language of the Eleventh Amendment has been interpreted by the Supreme Court to grant States and their instrumentalities immunity from suit in federal court.   See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (recognizing that each state is a sovereign entity within the federal system and that "'[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'")   Sovereign immunity is not equivalent to absolute immunity, as the following three exceptions to the Eleventh Amendment illustrate: (1) Congress may abrogate state immunity if it unequivocally expresses its intent to do so and acts pursuant to a valid exercise of congressional power; (2) a State may waive sovereign immunity by consenting to a lawsuit; and (3) individuals may seek prospective relief against State officials for

-7-

ongoing violations of federal law.  Bane v. Virginia Dep't of Corrections, 267 F. Supp. 2d 514, 524 (W.D. Va. 2003).

To begin, it is appropriate to recall that the Supreme Court has held that Section 504 of the Rehabilitation Act invokes Congress' powers under the Spending Clause to place conditions on the grant of federal funds.  Barnes v. Gorman, 536 U.S. 181, 186 (2002).  Spending Clause legislation is "much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions." Id.; see also Constantine v. The Rectors and Visitors of George Mason Univ., 411 F.3d 474, 496 (4th Cir. 2005) (holding that George Mason University waived its Eleventh Amendment immunity to suit under Section 504 of the Rehabilitation Act when it accepted federal funds under the statute, which clearly and unambiguously conditions the receipt of such funds on the waiver of immunity).

In Constantine, the Fourth Circuit held that a Virginia agency that accepts Federal financial assistance waives its immunity to private suits to enforce Section 504.  Constantine v. The Rectors and Visitors of George Mason Univ., 411 F.3d at 491 ("[Section] 504 of the Rehabilitation Act 'invokes Congress' power under the Spending Clause, U.S. Const. [A]rt. I., § 8...to place

-8-

conditions on the grant of federal funds.'") <u>quoting</u> <u>Barnes v. Gorman</u>, 536 U.S. at 186.    VDOC and Hinkle recognize that <u>Constantine</u> is binding authority and seek to circumvent it by arguing that Congress may condition the receipt of Federal funds on a State agency's waiver of its Eleventh Amendment immunity only in situations in which Congress may unilaterally abrogate the States' immunity. However, that position was the predicate of the Commonwealth's argument in <u>Madison v. Virginia</u>, 474 F.3d 118 (4th Cir. 2006), wherein the Fourth Circuit explicitly rejected the argument that Congress may not attach conditions to federal funds. <u>Madison v. Virginia</u>, 474 F.3d at 123-24, 127.   ("[T]o be bound by 'federally imposed conditions,' recipients of federal funds must accept them 'voluntarily and knowingly.'"(internal citations omitted))

        Those decisions are consistent with the decisions of every other Court of Appeals in the country, each of which has held that Section 504, along with 42 U.S.C. § 2000d-7, unambiguously conditions the receipt of Federal funds on the waiver of Eleventh Amendment immunity.[1]   The decisions

---

[1]    See <u>Barbour v. WMATA</u>, 374 F.3d 1161 (D.C. Cir. 2004), <u>cert. denied</u>, 544 U.S. 904 (2005); <u>Pace v. Bogalusa City Sch. Bd.</u>, 403 F.3d 272 (5th Cir. (<em>en banc</em>), <u>cert. denied</u>, 546 U.S. 933 (2005); <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108 (1st Cir. 2003); <u>Koslow v. Pennsylvania</u>, 302

in this district are to the same effect.

In a factually similar case decided in this district, a hearing impaired prisoner filed a civil rights action against the prison warden and other state officials alleging that the state prison's failure to provide him with an interpreter to assist him with his school work violated his rights under the Rehabilitation Act. Chase v. Baskerville, 508 F. Supp. 2d 492, 497 (E.D. Va. 2007). The defendants, VDOC and the warden of the facility, moved to dismiss the case on the ground that Congress had failed to abrogate the State's sovereign immunity for the plaintiff's Rehabilitation Act claims. Id. The court denied the motion, reasoning that "[a] state may waive its sovereign immunity 'by voluntarily participating in federal spending programs when Congress expresses a clear intent to

---

F.3d 161, 172 (3rd Cir. 2002), cert. denied, 537 U.S. 1232 (2003); Robinson v. Kansas, 295 F.3d 1183, 1189-1190 (10th Cir. 2002), cert. denied, 539 U.S. 926 (2003); Douglas v. California Dep't of Youth Auth., 271 F.3d 812, 820 (9th Cir.), amended by 271 F.3d 910 (9th Cir. 2001), cert. denied, 536 U.S. 924 (2002); Nihiser v. Ohio EPA, 269 F.3d 626, 628 (6th Cir. 2001), cert. denied, 536 U.S. 924 (2002); Jim C. v. United States, 235 F.3d 1079, 1081 (8th Cir. 2000) (en banc, cert. denied, 533 U.S. 949 (2001); Stanley v. Litscher, 213 F.3d 340, 344 (7th Cir. 2000); Sandoval v. Hagan, 197 F.3d 484, 493 (11th Cir. 1999), rev'd on other grounds, 532 U.S. 275 (2001); Litman v. George Mason Univ., 186 F.3d 544, 553-554 (4th Cir. 1999), cert. denied, 528 U.S. 1181 (2000). The Second Circuit, which at one time was of a different view, now appears to accept the proposition. See Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 113-15 (2nd Cir. 2001).

-10-

condition participation in the programs...on a State's
consent to waive its constitutional immunity.'" Id. at
507 quoting Constantine v. Rectors and Visitors of George
Mason Univ., 411 F.3d 474, 491 (4th Cir. 2005).  As the
court went on to explain, Section 2000d-7 clearly
conditions the receipt of federal funds upon the waiver of
constitutional immunity by providing that "[a] State shall
not be immune under the Eleventh Amendment of the
Constitution of the United States from suit in Federal
court for a violation of section 504 of the Rehabilitation
Act of 1973. . . ."  Chase, 508 F. Supp. 2d at 507.

Citing Madison, the court in Chase also found it
persuasive that the Fourth Circuit had held that:  (1) 42
U.S.C. § 2000d-7 expressly conditions the receipt of
federal funds on a waiver of State sovereign immunity; and
(2) the Spending Clause does not prevent Congress from
placing conditions on federal funds beyond those required
by the United States Constitution.  Id. at 127.  Based on
its reading of controlling Fourth Circuit precedent, the
court in Chase held that the State had waived its sovereign
immunity by accepting federal funding for its prisons, and
thereupon denied the motion to dismiss.  Chase, 508 F.
Supp. 2d at 507.

Similarly, in Bane v. Virginia Dep't of Corrections,

-11-

an inmate at Wallens Ridge State Prison filed suit under 42
U.S.C. § 1983 and Section 504 of the Rehabilitation Act
alleging that he had sustained injuries when prison
officials refused to handcuff him with his hands in front
of his body to accommodate his chronically unstable right
shoulder.  267 F. Supp. 2d 514, 517-18 (W.D. Va. 2003).
VDOC argued that it enjoyed absolute sovereign immunity
from suit and that the Commonwealth had not consented to
waive sovereign immunity by accepting federal funds.  Id.
at 519.  The court reasoned that 42 U.S.C. § 2000d-7(a)(1)
provides a clear statement of Congressional intent to
condition the receipt of federal funds on a state's waiver
of its sovereign immunity and held that there had been a
knowing waiver of sovereign immunity from actions under the
Rehabilitation Act.  Id. at 15.

The decisions in Constantine, Madison, Chase, and Bane
teach that, by accepting federal funding, Virginia
(including VDOC) has waived sovereign immunity as a bar to
actions under Section 504 of the Rehabilitation Act.
Applications of the same principles here dictate that the
motion to dismiss must be denied.

The defendants seek to avoid that consequence by
arguing that Congress may not use its authority under the
Spending Clause to have a State waive its sovereign

-12-

immunity in an area where Congress could not unilaterally abrogate the States' immunity. The authority on which this rather novel proposition rests is College Savings Bank. However, the defendants misapprehend the holding of the Supreme Court in College Savings Bank and, in so doing, rely on selective citations of passages from the decision that do not relate to the authority of Congress under the Spending Clause. At the same time, the defendants essentially ignore the parts of College Savings Bank that do relate to authority of Congress under the Spending Clause.

The waiver asserted in College Savings Bank was based on a provision of the Trademark Remedy Clarification Act, which amended the Lanham Act to subject States to private suits for false and misleading advertising. College Savings Bank, 527 U.S. at 668. The plaintiff in that case and the United States argued that the statute was a valid abrogation of the Eleventh Amendment immunity to Lanham Act suits, a proposition which the Supreme Court rejected. Alternatively, the plaintiff and the United States argued that the State of Florida had "impliedly" or "constructively" waived immunity by advertising an investment program after having been put on notice by the language of the statute that it would be subject to Lanham

-13-

Act liability for doing so.  Id. at 680.  The Supreme Court rejected that argument, holding that the State's "mere presence in a field subject to Congressional regulation" was not enough to qualify an express consent by the State to waive its sovereign immunity.  Id.

In differentiating the alleged constructive waiver at issue in College Savings Bank, the Supreme Court held quite clearly that State waivers effectuated pursuant to the Spending Clause are "fundamentally different" from the waiver that was urged, but rejected, in College Savings Bank.  Id. at 686.  In fact, the decision in College Savings Bank rather clearly supports the authority of Congress to grant Federal funds to State agencies in exchange for their waiver of sovereign immunity to certain types of suits, entirely without regard to whether Congress could abrogate the State's immunity to those suits.  That principle, of course, is demonstrated by the decision in Constantine, as well as by the decision in Litman v. George Mason Univ., 186 F.3d 544, 555 (4th Cir. 1999), cert. denied, 528 U.S. 1181 (2000) (holding that by voluntarily accepting federal education funding, George Mason University was unequivocally put on notice that it may not assert Eleventh Amendment immunity to any discrimination lawsuits).

-14-

The Commonwealth also suggests that the congruence and proportionality precepts announced in City of Boerne v. Florida, 521 U.S. 507, 520 (1997) and refined in Tennessee v. Lane, 541 U.S. 509 (2004) and United States v. Georgia, 546 U.S. 151 (2006) ought to be applied to test the validity of Section 504 of the Rehabilitation Act. Concerns about congruence and proportionality are applicable quite clearly in context of measuring the validity of Congressional action under Section 5 of the Fourteenth Amendment, but they have no place in considering whether Section 504 is a valid exercise of congressional authority under the Spending Clause.      Indeed, the defendants cite no authority in support of such a proposition, and the Court can find none to support it. Moreover, in Constantine, the Fourth Circuit actually resolved the immunity questions respecting Title II of the Americans With Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act by applying a separate and distinct analysis for each statute, first holding, after making a proportionality and congruence analysis, that Title II of the Americans With Disabilities Act was a valid exercise of Section 5 authority as applied in the education context, and then holding, without making such an analysis, that Section 504 was a valid exercise of Spending Clause

-15-

authority, thereby illustrating rather directly that the construct urged by the defendants here is not appropriate in assessing waivers under the Spending Clause.

Moreover, the defendants' assertion that the analytical approach articulated in United States v. Georgia should be applied here simply does not withstand scrutiny. In Georgia, the Supreme Court actually directed that, before determining whether Congress had validly abrogated the States' Eleventh Amendment immunity to claims under Title II of the ADA, courts must determine whether the plaintiff in a particular case alleges conduct that violates Title II but does not violate the Constitution. It is rather clear that those instructions have no application where, as here, Section 5 of the Fourteenth Amendment is not at issue.

CONCLUSION

For the foregoing reasons, the DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S DAMAGES CLAIMS ON SOVEREIGN IMMUNITY GROUNDS (Docket No. 70) is denied.

It is so ORDERED.

_____/s/_____     REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 27, 2008

-16-